**WALT DISNEY PRODUCTIONS, a corporation, Plaintiff,**

v.

**FILMATION ASSOCIATES, a corporation, Group W Cable, Inc., a corporation, Westinghouse Broadcasting and Cable, Inc., a corporation, and Westinghouse Electric Corporation, a corporation, Defendants.**

**No. CV852277AHS.**

United States District Court, C.D. California.

Feb. 20, 1986.

Gang, Tyre & Brown, Inc. and Sidley & Austin, Los Angeles, Cal., for plaintiff.

Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STOTLER, District Judge.

### INTRODUCTION

In this action, plaintiff Walt Disney Productions ("Disney") asserts claims for vio-

lation of its copyright, trademark, and state-created rights in certain animated character depictions, full-length animated films, and industry marks.

Defendants Filmation Associates, Group W Cable, Inc., Westinghouse Broadcasting and Cable, Inc., and Westinghouse Electric Corporation (collectively, "Filmation") have moved for summary judgment on all counts of the First Amended Complaint, arguing in response to plaintiff's claims of copyright infringement: first, that materials created in the production of their motion picture cannot themselves be the subject of an action for copyright infringement; and, second, that no substantial similarity exists between any Filmation works and any of Disney's copyrighted works. In response to plaintiff's claims under the Lanham Act and the California law of unfair competition, defendants argue that defendants' advertisements are dissimilar as a matter of law to plaintiff's marks and that the claims must be dismissed for Disney's failure to show actual diversion of sales.

By this Order, the Court denies defendants' motion, concluding: (1) the preliminary works created in production of defendants' motion picture can constitute infringing copies within the meaning of the 1976 Copyright Act; (2) the issue of infringement of Disney's copyrights remains a question for the trier of fact; (3) the Lanham Act and unfair competition claims include triable issues; and (4) Disney's Lanham Act and unfair competition claims do not fail for a lack of evidence of actual diversion of sales.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Disney is a corporation that produces, among other things, animated films. Beginning in 1937, Disney produced a series of feature-length motion pictures, which it refers to as the "Disney Classics." Included among these are pictures entitled "Pinocchio," "Alice in Wonderland," and "The Jungle Book." The story of each of these pictures is based in part upon preexisting work, much of which is in the public domain.

Filmation is also in the business of producing animated films. In or prior to February, 1985, Filmation announced its intention to produce and distribute a series of fully animated feature-length films which it refers to as its "New Classics Collection." Included among these are films entitled "The New Adventures of Pinocchio," "Alice Returns to Wonderland," and "The Continuing Adventures of the Jungle Book." Filmation's works are based in part upon the same preexisting sources as are Disney's.

On April 10, 1985, Disney filed suit against Filmation, asserting eleven causes of action under the federal copyright and trademark laws, as well as California unfair competition laws. Defendants initially moved to dismiss every count in the Complaint for failure to state a claim upon which relief can be granted. By an Order dated July 16, 1985, the Court granted defendants' motion with regard to all but Counts Three, Four, and Five.

On July 22, 1985, Disney filed a First Amended Complaint, setting forth, in amended form, its eleven causes of action against defendants. The gravamen of the First Amended Complaint is that Filmation has implemented plans to produce and distribute its New Classics Collection by: (a) creating various items of advertising that contain titles owned by Disney and contain depictions that infringe, copy, and/or unfairly compete with depictions of characters owned by Disney; (b) using these infringing materials to solicit purchases of films from prospective distributors and others; and (c) commencing production of "The New Adventures of Pinocchio." *See* First Amended Complaint, ¶ 8.

On August 5, 1985, Disney moved for a preliminary injunction to restrain Filmation from advertising for its films with materials that purportedly infringed Disney's copyrights. In conjunction with the motion, Disney submitted copies of Filmation's challenged advertisements along with Disney's depictions of the characters embodied in each. *See* Declaration of Donald S. Engel, filed July 8, 1985, Exhibits "1a–1" through "11o." The Court denied

the motion, finding that Disney had failed to show a likelihood of success on the merits of its claims.

On October 10, 1985, the Court heard and denied Filmation's motion to dismiss the First Amended Complaint. After the Court's decision, counsel for Filmation requested an opportunity to file further papers expanding its already-filed motion for summary judgment from Counts Three, Four, and Five of the Complaint to all counts in the First Amended Complaint. The amended version of this motion was filed November 8, 1985 and ultimately was scheduled for hearing on January 24, 1986. After hearing the arguments of counsel and viewing two videocassettes submitted by counsel at the time of hearing, the matter was submitted for decision.

## DISCUSSION

### A. COUNT SIX: COPYRIGHT INFRINGEMENT

In Count Six, Disney alleges that Filmation has infringed Disney's exclusive right to reproduce its copyrighted works in copies. *See* 17 U.S.C. § 106(1).[1]

Disney owns the copyrights to a fully-animated feature-length motion picture entitled "Pinocchio" and to a series of original designs and drawings of certain charac-

ters—named Pinocchio, Gepetto, and Stromboli—portrayed therein. These copyrights are valid and duly registered. *See* First Amended Complaint, Exhibits A–H. Filmation has begun production of a fully-animated motion picture entitled "The New Adventures of Pinocchio," which, contends Disney, utilizes a substantial amount of the aforesaid copyrighted materials. In the course of production, Filmation has produced a script, "story board," "story reel,"[2] models, and designs, which are said to be tangible and permanent reproductions of characters and scenes, "constituting copies of material" copyrighted by Disney. *Id.*, ¶ 61.[3]

It is undisputed that Filmation has generated a substantial body of work preliminary to a "finished film." It is also undisputed, however, that it has not completed its film "The New Adventures of Pinocchio." Filmation contends that Count Six is not actionable until it has completed work on its motion picture. Alternatively, Filmation asserts it is entitled to judgment because any articles so far produced are not substantially similar to Disney's copyrighted expressions.

#### 1. *Actionable "Copies"*

■ Filmation argues that the materials so far created are only transitory steps en

---

1. Section 106 provides in part:

    Subject to sections 107 through 108, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

    (1) to reproduce the copyrighted work in copies or phonorecords;

    . . . . .

    17 U.S.C. § 106(1).

2. A "story reel" is a working model used to create the final animated product. To create a story reel, Filmation first records a reading of the script. It then creates a "story board" comprising sketches of the various scenes in the film set in the order in which they will be portrayed and "shoots" the sketches to synchronize with the recorded dialogue track and a rough music track. By viewing the reel, the director can get a "feel" for the story line and pacing of the anticipated picture and can begin allocating responsibility for its animation. *See* Deposition of Hal Sutherland, pp. 37–51; Declaration of Burny Mattinson.

3. The parties disagree as to the scope of Count Six both as pleaded and as litigated throughout the course this action. Filmation contends that the infringement alleged refers only to the Disney's copyrighted character depictions, and not to the film "Pinocchio." Disney responds that it has consistently alleged violation of copyrights to its individual depictions and to its film.

    Disney's broader construction is supported both by the count as pleaded in the First Amended Complaint and as characterized by Disney since the beginning of this action. The "copyrighted material" allegedly copied includes "a series of original designs and drawings of characters which would appear in Disney's ... PINOCCHIO" (First Amended Complaint, ¶ 27), and "an original fully animated feature-length motion picture entitled PINOCCHIO" (First Amended Complaint, ¶ 33). Moreover, in conjunction with both motions to dismiss, Disney has argued that Filmation's products copy the elements and "feel" of the original Disney motion picture.

route to a fixed product, and that until its film is completed and ready for distribution, there exists no article that could be said to infringe any of Disney's copyrights.

Filmation's argument is refuted by the provisions of the 1976 Copyright Act, 17 U.S.C. §§ 101–914 (the "Act"). Under the Act, " '[c]opies' are material objects ... in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101. The definition "includes the material object ... in which the work is first fixed." *Id.* Further, a work is " 'fixed' in a tangible medium of expression when its embodiment in a copy ... is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* When the work is "prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work." *Id.* To constitute an actionable copy, therefore, an expression need only be a material object permanently case in some intelligible form. *See* 2 Nimmer on Copyrights, § 8.02(B), pp. 8–22—8–25 (1985).

■ The articles created by Filmation in the production of its film, including a script, story board, story reel, and promotional "trailer," satisfy this definition, and thus can constitute copies for purposes of the Act. Because the right of reproduction affords a copyright owner protection against an infringer even if he does not also infringe the § 106(3) right of distribution, *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 474, 104 S.Ct. 774, 805, 78 L.Ed.2d 574 (1984) (Blackmun, J., dissenting); House Report No. 94–1476, 94th Cong., 2d Sess. (1976), p. 61, U.S.Code Cong. & Admin.News 1976, p. 5659, the fact that the articles may never be published or, indeed, may be prepared only for the use of Filmation's animators, does not obvi-

ate the possibility of infringement. *See Harper & Row v. Nation Enterprises,* —— U.S. ——, ——, 105 S.Ct. 2218, 2226, 85 L.Ed.2d 588, 602 (1985) (noting that the Act "eliminated publication 'as a dividing line between common law and statutory protection,' ... extending statutory protection to all works from the time of their creation"). As explained by Professor Nimmer, "subject to the privilege of fair use, and subject to certain other exemptions, copyright infringement occurs whenever an unauthorized copy ... is made, even if it is used solely for the private purposes of the reproducer." 2 *Nimmer,* § 8.02(C), p. 8–26. It is thus irrelevant that Filmation has not concluded or "realized" what it considers to be a final motion picture: the Act prohibits the creation of copies, even if the creator considers those copies mere interim steps toward some final goal.

■ It is similarly no defense to copying that some of Filmation's expressions may be embodied in a medium different from that of plaintiff's. *Berkic v. Crichton,* 761 F.2d 1289, 1292 (9th Cir.1985) ("in comparing ... a film with a written work, the proper question ... is whether the ordinary, reasonable audience would recognize the defendant's work as a 'dramatization' or 'picturization' of the plaintiff's work"). *See also Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27 (2d Cir.1982) (copying from gift wrapping paper to clothing actionable). *But see Sid & Marty Krofft Television v. McDonald's Corp.,* 562 F.2d 1157, 1164 (9th Cir.1977) (observing, in dicta, that a painting of a nude would not infringe a statue of a nude). Thus, Filmation's materials, including scripts and story outlines, can infringe Disney's copyright on "Pinocchio" even though they are not rendered as a motion picture.

This had been the law in the Ninth Circuit even under the Copyright Act of 1909. In *Walker v. University Books, Inc.,* 602 F.2d 859 (9th Cir.1979), plaintiff had copyrighted a set of fortune telling cards. She attempted unsuccessfully to strike a marketing deal with defendants, submitting to

them a sample of her deck in the process. Afterward, she assigned her copyright to a third party. Plaintiff subsequently discovered that defendant planned to market a deck of cards similar to the ones she had supplied them in the course of negotiations. She received from defendants "certain blueprints," which were produced before the date of the assignment (*id.*, at 863), but could adduce no evidence of a completed deck of cards produced and sold during the period in which she owned the copyright.

On appeal from summary judgment in defendant's favor, the court of appeals rejected defendant's argument that the blueprints were not themselves copies:

> The district court viewed the making of the blueprints as merely a preliminary step or process directed towards the manufacture of [defendants'] finished product, their set of [cards].... However, the fact that an allegedly infringing copy of a protected work may itself be only an inchoate representation of some final product to be marketed commercially does not in itself negate the possibility of infringement.

*Walker*, 602 F.2d at 864. According to the *Walker* court, the operative question was not whether defendants considered the article a final product, but "whether they unauthorizedly utilized [plaintiff's] work in the manufacture of their blueprints." *Id.*

Finally, the absence of a completed motion picture does not preclude meaningful comparison of Disney's character depictions and film with Filmation's materials. Although Filmation contends that copyright infringement of a cartoon character cannot be based on a mere sketch that is not part of a story, there is no support for this proposition. It is true that courts generally have considered "not only the visual resemblances but also the totality of the characters' attributes and traits," 1 *Nimmer* § 2.12, p. 175, n. 16.2, and, thus, that the trier of fact would ordinarily evaluate a character in the context of a story. But where the work sued upon is not a "completed" story, but a series of depictions and other works, comparison of the expressions may be made in the form in which they are presented. *Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 756 (9th Cir.1978) (comparison of graphic images of cartoon characters sufficient to allow action for copyright infringement).[4]

### 2. Substantial Similarity

Filmation's alternative argument—that its creations are not substantially similar as a matter of law—is unconvincing.

In order to establish copyright infringement, a plaintiff must prove ownership of the copyright and "copying" by the defendant. "Copying" is proved by evidence that the defendant had access to the copyrighted work and that his work bears a "substantial similarity" to plaintiff's. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977). In turn, the determination of similarity of expressions like the ones here in controversy involves two steps: first, whether there is substantial similarity in ideas (the "extrinsic test"); second, whether there is substantial similarity between the expressions (the "intrinsic test"). *Krofft*, 562 F.2d at 1162.

Disney and Filmation do not dispute the similarity of the underlying ideas: all of the disputed figures concededly were taken from specific literary characters within the public domain. Rather, the dispute centers on the similarity of the expressions themselves—whether the expression

---

**4.** But as the *Air Pirates* court explained later in its opinion, there is little authority on the question:

> [M]ost of the cases dealing with cartoon characters have considered the character's personality and other traits in addition to its image.... In what appears to be the only two cases that viewed a character only as an image (*King Features Syndicate v. Fleischer,*

> 299 F. 533 (2d Cir.1924); *Fleischer v. Freundlich,* 73 F.2d 276 (2d Cir.1934)), the alleged copying was of a doll, which could have only an image and no conceptual character traits; therefore the issue of whether the comic character's depiction included a personality was not raised.

581 F.2d at 757, n. 14.

embodied in the first is substantially similar to that embodied in the second. *Berkic v. Crichton*, 761 F.2d 1289 (9th Cir.1985); *International Luggage Registry v. Avery Products Corp.*, 541 F.2d 830, 831 (9th Cir.1976). In making this determination, the finder of fact does not analyze the works or examine external criteria, *Krofft*, 562 F.2d at 1164, but decides as an ordinary observer "whether the 'total concept and feel' of the two works is substantially similar," *Berkic*, 761 F.2d at 1292. *See also Twentieth Century-Fox Film Corp. v. Stonesifer*, 140 F.2d 579, 582 (9th Cir.1944) ("The two works ... should be considered and tested, not hypercritically or with meticulous scrutiny, but by the observations and impressions of the average reasonable reader and spectator."). This determination presents a question of fact not often appropriate for summary judgment, *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985), although judgment is proper if, after comparing plaintiff's and defendant's material, a court can say that no reasonable person could find the two items substantially similar. *Berkic*, 761 F.2d at 1292.

After a review of the exhibits now of record,[5] the Court cannot say that no reasonable person could find substantial similarity between Disney's copyrighted materials and the work of Filmation. Filmation has thus far been willing to produce

little of its work in response to discovery requests by Disney, but what little has been adduced raises a triable issue of substantial similarity, at least with regard to Disney's copyrighted depictions. Although it is less clear that any material so far submitted is substantially similar to Disney's "Pinocchio," any inadequacy in Disney's evidentiary showing is largely the consequence of Filmation's unwillingness to produce those articles in discovery.[6] Summary judgment on this aspect of Count Six must also be denied. Rule 56(f), Fed.R. Civ.P.; *Texas Partners v. Conrock Co.*, 685 F.2d 1116, 1119 (9th Cir.1982), *cert. dismissed*, 460 U.S. 1029, 103 S.Ct. 1281, 75 L.Ed.2d 501 (1983).

### B. COUNTS THREE, FOUR, AND FIVE: COPYRIGHT INFRINGEMENT

In Counts Three, Four, and Five, Disney alleges that Filmation has infringed Disney copyrights through advertising and promotional materials distributed for several of its planned productions. Specifically, Count Three concerns Filmation advertisements for "The New Adventures of Pinocchio" and Disney depictions of the characters Pinocchio, Gepetto, and Stromboli (First Amended Complaint, ¶¶ 29, 30, 31); Count Four concerns advertisements for "The Continuing Adventures of the Jungle Book" and Disney depictions of the characters Mowgli and Baloo (*id.*, ¶¶ 42, 43); and

5. This includes plaintiff's film "Pinocchio," defendants' three-minute promotional trailer of its planned film, and two published works of the story "Pinocchio." C. Collodi, *Pinocchio* (1982) (illustrated by Richard Floethe); C. Collodi, *The New Adventures of Pinocchio*, (1925, revised ed. 1969) (illustrated by Attilio Mussino). The Court has viewed or read all of this evidence.

The two videocassettes submitted at the time of hearing were received solely as the arguments of counsel.

6. Noting that an adverse ruling in this case might prevent completion of the film "The New Adventures of Pinocchio," Filmation argues that this action portends an unlawful "prior restraint" of its speech. This argument is without merit. By distinguishing between copyrightable expression and uncopyrightable facts and ideas, the Copyright Act itself embodies a permissible

balance between First Amendment protections and the protection of a copyright holder's rights. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, —— U.S. ——, ——, 105 S.Ct. 2218, 2228, 85 L.Ed.2d 588, 604 (1985); *New York Times Co. v. United States*, 403 U.S. 713, 726 n. *, 91 S.Ct. 2140, 2147 n. *, 29 L.Ed.2d 822 (1971) (Brennan, J., concurring). The injunctive relief afforded an aggrieved copyright holder under 17 U.S.C. § 502(a) thus does not "restrain" any protected speech. *See Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 577 n. 13, 97 S.Ct. 2849, 2858 n. 13, 53 L.Ed.2d 965 (1977) ("Federal District Courts have rejected First Amendment challenges to the federal copyright law on the ground that 'no restraint [has been] placed on the use of an idea or concept.'"); *Walt Disney Productions v. Air Pirates*, 345 F.Supp. 108, 115–116 (N.D.Cal.1972).

Count Five concerns advertisements for "Alice Returns to Wonderland" and the Disney depiction of the Cheshire Cat (*id.*, ¶ 53). The Disney drawings of these characters are all protected by registered copyrights. *See* First Amended Complaint, Exhibits A–D, J, K, N.

### 1. *Law of the Case*

■ Filmation first argues that this Court's August 5, 1985 denial of Disney's motion for a preliminary injunction establishes "law of the case" that Filmation's advertisements do not infringe Disney copyrights. This argument is without merit.

The decision of a trial court granting or denying a preliminary injunction "does not so establish the 'law of the case' as to estop either the parties or the court from proceeding with the case on its merits." *Sierra Club v. Morton*, 348 F.Supp. 219, 220 (N.D.Cal.1972). *See Sierra Club v. Hickel*, 433 F.2d 24, 33–34 (9th Cir.1970) ("in appraising [the likelihood of success], . . . our function is not . . . to make a final decision on the merits").

### 2. *Substantial Similarity*

■ Filmation further contends that there is no substantial similarity between their advertising materials and Disney's copyrighted depictions. This contention, too, is without merit. None of the Filmation depictions involved is so different from the analogous Disney depiction that no reasonable viewer could find substantial similarity. *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983).

### C. COUNTS ONE, TWO, SEVEN, AND EIGHT: LANHAM ACT

In Counts One, Two, Seven, and Eight, Disney alleges trademark infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

■ In Count One, Disney alleges that Filmation has appropriated titles and character depictions belonging to Disney to advertise and solicit sales of its "New Classics Collection." First Amended Complaint, ¶ 13. In Count Two, Disney alleges that Filmation made such representations to mislead the public into believing that its films will "somehow be associated with, or represent sequels, continuations or remakes of the Disney Classics of the same or similar names." *Id.* at ¶ 23. In Count Seven, Disney alleges that Filmation has appropriated Disney's trademark "Pinocchio" for the advertising and solicitation of sales of its "New Classics Collection." *Id.*, ¶ 69. Count Eight sets forth similar allegations, adding only that the solicitations violated Disney's trademark interests in the specific characters of Pinocchio, Gepetto, Stromboli, and others, and in certain scenes and artwork in the Disney film. *Id.*, ¶ 75. All of these counts concern the same advertisements cited in Counts Three, Four, and Five.[7]

---

7. Disney argues that these counts address not only the promotions that have been before the Court, but also "defendants' use of Disney's characters and story elements in the motion picture 'The Further Adventures of Pinocchio' [sic] and other planned motion picture projects." Memorandum in Opposition at 42, 11. 22–24. But this current construction of these claims is inconsistent with Disney's construction throughout this litigation. While some of these claims do contain references to the specific Filmation films, the gravamen of each claim is the pattern of solicitation for those films. This latter interpretation of these claims is consistent with the Court's rulings on Filmation's two motions to dismiss. On the first motion, the Court dismissed Disney's claims as unripe, on the understanding that the claims were directed to films that were not then "entere[d] into commerce." Order of Dismissal, July 16, 1985. The second time the motion came on for ruling—this time on the First Amended Complaint—Disney argued and the Court agreed that the claims referred to Filmation's "advertise[ment] and solicit[ation of] sales of its films in such a way as to confuse persons as to the origin of Filmation's product." Minute Order, October 10, 1985.

Even if these counts could be read as broadly as Disney urges, Filmation would be entitled to judgment on any asserted "misrepresentation" actually embodied within a motion picture. Because the mere solicitation of sales is sufficient "commerce" for an action under § 43(a), *Nike, Inc. v. Rubber Manufacturers Association, Inc.*, 509 F.Supp. 919, 924 (S.D.N.Y.1981), the advertisements cited in these counts are actionable

Filmation argues that it is entitled to judgment on these claims because, as a matter of law, there is no likelihood of confusion as to the origin of the products advertised. Alternatively, it argues that Disney's claims must fail for its failure to adduce any evidence of damage arising from these alleged infringements. Neither of these positions justifies judgment for Filmation on these counts.

### 1. *Likelihood of Confusion*

■■■■■ To establish a claim of mark infringement, a party must show that it has become identified with its mark, *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 203 n. 5 (2d Cir.1979), and that defendant's use of the mark has created a likelihood of confusion as to the origin of defendant's products, *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir.1980). The Ninth Circuit has listed eight factors relevant to the showing of a likelihood of confusion: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir.1981). This determination is a question of fact, and can seldom be resolved by summary judgment. *Id.*

■■■ Here, Filmation is not entitled to judgment on the question of confusion. Although the parties have not presented plenary evidence of all the relevant factors in this test, the evidence of some of the factors—including relatedness of the goods, marketing channels used, and similarity of the marks—is sufficient to

show that a consumer of Filmation's goods could be confused by its advertisements.

### 2. *Damages*

Filmation, citing the deposition testimony of a Disney executive, asserts that Disney has not adduced any evidence of actual consumer confusion or diversion of sales of its motion pictures. *See* Deposition of R. Cook, at 141:7–141:21, and 160:7–11, 161:22.[8] Lack of actual loss of sales, contends Filmation, is fatal to Disney's Lanham Act claims. This argument is unavailing.

■■■ The Lanham Act provides a right of recovery against any person who falsely describes or represents his product by any person "who believes that he is or is likely to be damaged by the use of such false description or representation." 15 U.S.C. § 1125(a). Proof of actual damages, including diversion of sales, is not required for a plaintiff to obtain relief under this section. *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 278 (2d Cir.1981). Although plaintiff must provide more than his "mere subjective belief" that he will be injured, *Eastern Air Lines, Inc. v. New York Air Lines, Inc.*, 559 F.Supp. 1270, 1278 (S.D.N.Y.1983), proof of a reasonable likelihood of injury is sufficient. *Vidal Sassoon*, 661 F.2d at 278; *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312 (2d Cir.1982).

### D. COUNTS NINE, TEN, AND ELEVEN: STATE LAW UNFAIR COMPETITION

By consensus of the parties, Counts Nine, Ten, and Eleven are derivative state law claims incorporating the allegations of Counts One, Seven, and Eight. Filmation has not cited any separate justification for

---

even before the products to which they refer are in commerce. *National Lampoon, Inc. v. American Broadcasting Cos., Inc.*, 376 F.Supp. 733 (S.D.N.Y.), *aff'd*, 497 F.2d 1343 (2d Cir. 1974). *See Matsushita Electric Corp. v. Solar Sound System, Inc.*, 381 F.Supp. 64, 69 (S.D.N.Y. 1974) (noting that a contrary result would "leave the federal government powerless to prevent fraudulent interstate advertising"). But no

representation embodied within a film itself can be actionable before the film is rendered in a form capable of being viewed by a consumer.

8. The declarations of witnesses Richard Cook and William Mechanic were not timely filed, Local Rule 7.6, and are ordered stricken from the record.

entering judgment on these claims. Defendants' motion must therefore be denied on these counts as well.

## CONCLUSION

Defendants' motion for summary judgment is denied. Counsel shall appear at a status conference on March 24, 1986, at 1:30 p.m. for which they shall file a current Joint Status Report in accordance with Local Rule 6.4.2.

IT IS SO ORDERED.