## In re CENTURY 21–RE/MAX REAL ESTATE ADVERTISING CLAIMS LITIGATION.

### CENTURY 21 REAL ESTATE CORP., Plaintiff,

v.

### RE/MAX SOUTH COUNTY et al., Defendants.

MDL No. 1008.

No. SA CV 93–567 AHS (EEx).

United States District Court, C.D. California.

Dec. 20, 1994.

Barry Arthur Zaslav, Timothy L. Joens, Joens & Associates, Irvine, CA, for plaintiff Century 21 Real Estate Corp.

Neil M. Soltman, Jerome M. Jauffret, Mayer Brown & Platt, Los Angeles, CA, for defendant ReMax South County, Gary O. Thomas Inc., a Corp. dba ReMax South County dba ReMax of Newport Beach.

John K. Trotter, Orange, CA, pro se, special master.

ORDER DENYING PLAINTIFF'S MO-TION FOR PARTIAL SUMMARY JUDGMENT; GRANTING THOMAS' MOTION FOR SUMMARY JUDG-MENT; GRANTING IN PART AND DENYING IN PART RE/MAX IN-TERNATIONAL, INC.'S AND BYME, INC.'S MOTION FOR JUDGMENT ON ALL CLAIMS

STOTLER, District Judge.

I.

### PROCEDURAL HISTORY

The Court has received full briefing and entertained oral argument on three motions brought by the parties to this litigation. On June 6, 1994, plaintiff Century 21 Real Estate Corporation ("Century 21") filed a Motion for Partial Summary Judgment. Defendants filed opposition on July 5, 1994. On July 8, 1994, the Court stayed the matter to coordinate the proceedings with related cases transferred to this Court by the Judicial Panel on Multidistrict Litigation. The Court lifted the stay on August 16, 1994, and Century 21 filed a reply on September 19, 1994.

On September 2, 1994, defendant Gary O. Thomas, Inc. ("Thomas") filed a Motion for Summary Judgment. Century 21 filed opposition on September 12, 1994. Thomas filed a reply on September 19, 1994.

Defendants RE/MAX International, Inc. ("RMI") and Byme, Inc. ("Byme") filed a Motion for Judgment on all Claims Pursuant to Fed.R.Civ.P. 12(c) and 56 on September 2, 1994. On September 12, 1994, Century 21 filed opposition. RMI and Byme filed a reply on September 19, 1994.

On September 26, 1994, the Court heard oral argument on these matters and took them under submission. On October 5, 1994, with leave of Court, Century 21 filed a supplemental brief in response to the defendants' Motions. Defendants filed a supplemental response, also with the Court's permission, on October 11, 1994. The parties then filed three additional briefs (two by Century 21, one by defendants), all without leave of Court and none of which have figured in the Court's disposition of these Motions. All unauthorized briefs are ordered stricken.

By this Order, the Court denies Century 21's motion for partial summary judgment, grants summary judgment to defendant Thomas as to all claims, and grants judgment on the pleadings in favor of RMI and Byme on all advertising materials except as to one television ad.

II.

### GENERAL BACKGROUND

Century 21 and RE/MAX are both real estate brokerage firms that oversee numerous transactions in the United States and abroad. During the 1980's, RE/MAX emerged as Century 21's primary competitor. In its First Amended Complaint, Century 21 alleges that, beginning in 1993, the RE/MAX defendants began a widespread advertising campaign claiming, among other things, that RE/MAX had surpassed Century 21 to become the number one real estate organization in the number of transactions handled in 1992 and 1993. Century 21 argues that these claims are demonstrably false and that defendants, by advertising such claims, have violated § 43(a) of the Lanham Act and certain provisions of the California Unfair Practices Act.

III.

### DISCUSSION

**A. The Standards of Review**

*1. Judgment on the Pleadings*

In considering a motion for judgment on the pleadings, the Court must ac-

cept all material allegations of the complaint as true and view them in the light most favorable to the plaintiff. *NL Industries v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Dismissal is proper only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Sun Savings and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990).

■ If a party makes a "speaking" Rule 12(c) motion by presenting facts outside the pleadings in support of its motion, "... the motion shall be treated as one for summary judgment" and be disposed of in accordance with the summary judgment standards discussed below. Fed.R.Civ.P. 12(b) and 12(c).

■ Facts outside the pleadings susceptible to judicial notice, however, do not mandate treating a motion to dismiss as a motion for summary judgment. *Emrich v. Touche Ross & Co.,* 846 F.2d 1190 (9th Cir.1988); *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986) (finding that a court may look beyond the complaint to judicially noticed matters of public record in determining a motion to dismiss). The court need not accept as true, for purposes of a motion to dismiss, allegations which are contradicted by facts susceptible to judicial notice. *See Mullis v. U.S. Bankruptcy Court for the Dist. of Nevada,* 828 F.2d 1385, 1388 (9th Cir.1987). In this case, the Court may consider the alleged false advertisements along with the pleadings in deciding the 12(c) motion. *See Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1993) (court may consider "documents whose contents are alleged in the complaint, but which are not physically attached to the pleading" in a motion to dismiss).

*2. Summary Judgment*

■ In order for a party to succeed on a motion for summary judgment, it must demonstrate that there is no genuine issue of material fact as to each element of the case and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To overcome a motion for summary judgment, the opposing party must set forth specific facts indicating that there is a genuine issue for trial. In other words, the party must present evidence sufficient for a reasonable jury to find for it instead of the moving party. Fed.R.Civ.P. 56(e). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court is not to determine issues of credibility on a motion for summary judgment; instead, the truth of each party's affidavits must be assumed. *T.W. Elec. Serv. v. Pacific Elec. Contractors Assn.,* 809 F.2d 626, 630 (9th Cir.1987).

### B. Century 21's Motion for Partial Summary Judgment

■ Century 21's Motion seeks partial summary judgment establishing that 1) Century 21 completed more transaction sides in 1992 and 1993 than RE/MAX and 2) the promotional claims of RE/MAX South County ("South County") are false and that a permanent injunction should issue. While the Motion seems primarily aimed at South County, the issue of transaction sides superiority affects the other defendants in the case.

With respect to the Motion as it relates to the issue of transaction sides superiority, it is denied, without prejudice. In the Order appointing the Special Master in this case, the Court specifically asked the Special Master "to ascertain how the parties record, report and arrive at 'transactions' and 'transaction sides' ... [and] to ascertain the extent of the allegedly false advertising." *See* Order Appointing Special Master, p. 2, 11. 20–27. Century 21's Motion asks the Court to make these same findings. To decide these issues now would be to ignore the Court's mandate to the Special Master. Since a decision on transaction sides superiority would be premature, it is for that reason that the Court denies Century 21's Motion on this issue without prejudice.

Insofar as the Motion is directed to South County, the reasoning and holding of the Court in section III.C. of this Order is dispositive. Thus, plaintiff's Motion as it relates

to South County is denied for the reasons set forth in section III.C. below.[1]

## C. Thomas' Motion for Summary Judgment

Century 21's claims against Thomas revolve around statements made in two documents distributed by Thomas through South County: a newspaper advertisement and a letter. On six dates in 1993, Thomas placed an advertisement in *The Newport Beach/Costa Mesa Daily Pilot.*

The ad stated:

"RE/MAX HAS THE POWER TO SELL! # 1 Real Estate Company In the U.S.A. In 1992 ● Most Total Transactions ... ● Highest Level Of Customer Satisfaction."

On or about March 8, 1993, a broker employed by these defendants sent a letter to clients claiming the following:

"It's now official. After several years of being close, we have now passed Century 21 to become the largest volume real estate organization in the United States and Canada."

Century 21 alleges that this advertisement and this letter constitute violations of the Lanham Act and portions of the California Unfair Practices Act because the claims made therein are false.

Section 43(a) of the Lanham Act provides in pertinent part: "Any person, who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(B).

■ To prevail on a false advertising claim under the § 43(a) of the Lanham Act, a plaintiff must establish the following elements:

"1) in its ... advertisements, defendant made false statements of fact about its own product;

2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience;

3) such deception is material, in that it is likely to influence the purchasing decision;

4) defendant caused its falsely advertised goods to enter interstate commerce; and

5) plaintiff has been or is likely to be injured as a result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the good will which its products enjoy with the buying public."

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service,* 911 F.2d 242, 244 (9th Cir.1990). Thomas has established that there are no genuine issues of material fact by pointing to Century 21's lack of evidentiary support for several elements required by the Lanham Act.

### 1. Elements 1 and 2: Falsity and Deception

■ To establish elements one and two, a plaintiff can show either 1) that the challenged advertisement is "literally false" or 2) while the advertisement is literally true, it is "likely to mislead or confuse consumers." *Johnson and Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham,* 960 F.2d 294, 297 (2nd Cir.1992). In other words, if an advertisement is literally or explicitly false, the plaintiff need not prove any impact on the buying public. *Coca–Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 317 (2nd Cir.1982). However, if a plaintiff cannot show literal falsity and instead relies on a claim of an "implied falsehood," the plaintiff must prove, "by extrinsic evidence, the challenged [advertisements] tend to mis-

---

1. Defendant Gary O. Thomas, Inc. ("Thomas") is a corporation doing business as Re/Max South County. Thus, while Thomas and South County are listed as separate defendants in the First Amended Complaint, they are the same entity. Therefore, the Court treats the Motion filed by Thomas, discussed in section III.C., as dispositive of all claims against Thomas and South County.

lead or confuse consumers." *Johnson and Johnson * Merck*, 960 F.2d at 297.

 With respect to the letter, Century 21 has not shown either of these elements. First, the letter is not literally false. The objectionable portions of the letter read, "... **we have now passed Century 21 to become the largest volume real estate organization in the United States and Canada**," and "... **our whole RE/MAX organization nationwide has beaten the odds and become # 1.**" Both of these statements are too ambiguous to be considered literally false. *See Coors Brewing Co. v. Anheuser-Busch Companies, Inc.*, 802 F.Supp. 965, 969 (S.D.N.Y.1992) (a claim which is ambiguous is not literally false). The words "volume" and "# 1" convey no specific meaning and thus cannot be considered literally false.

 Century 21 contends that the meaning of the letter can be ascertained from the meaning attributed to it by its author, Mr. Fisher. However, the testimony of Mr. Fisher cannot respond to the pertinent inquiry, namely, whether the letter was likely to confuse its audience. *See Johnson and Johnson * Merck*, 960 F.2d at 297–98 (appropriate question is "what does the public perceive the message to be?" and is usually answered by a consumer survey).

Second, Century 21 puts forth no evidence of the letter's effect on consumers. Given the ambiguity of the language used in the letter, this lack of evidence is fatal to Century 21's claims based on the letter. Thus, Thomas is entitled to summary judgment on these grounds with respect to the letter.

Century 21's claims regarding the advertisement fail for the same reasons. The objectionable phrases in the advertisement read: "**RE/MAX HAS THE POWER TO SELL! # 1 Real Estate Company In the U.S.A. In 1992 ● Most Total Transactions ... ● Highest Level Of Customer Satisfaction.**" The word "transactions" in this context carries many potential meanings—does it include leases and referrals; does it cover homes or all properties sold; does it include the selling side of the transaction, the buying side, or both? Century 21 argues that "transactions" refers to "transaction sides" as defined in the First Amended Complaint. However, the word "transactions" alone does not convey this meaning. Because this statement is ambiguous, it cannot be considered literally false. *See Coors Brewing Co.*, 802 F.Supp. at 969.

Similarly, the phrase "**Highest level of customer satisfaction**" is too ambiguous to be considered literally false. The "level of customer satisfaction" could refer to many different measures of customer's reactions to any one of RE/MAX's services. Once again, ambiguity precludes a finding of literal falsity.

Although defendants' motion cited to cases requiring extrinsic evidence where literal falsity was lacking, Century 21 offered no evidence concerning the ad's effect on consumers in its opposition. Instead, after receipt of the Court's written tentative ruling (see minutes of September 26, 1994) and after oral argument, Century 21 tried to put forth an "intercept" survey. As RE/MAX argues, this was hardly a timely elucidation of the ad's effect on consumers. Accordingly, the Court has disregarded Century 21's belated attempt to create a triable issue as to the advertisement's effect on consumers. Since Century 21 submitted no timely evidence on the point, this lack of evidence, in light of the ambiguity of the advertisement, leads the Court to grant Thomas' Motion for Summary Judgment with respect to the advertisement. *See Johnson and Johnson * Merck*, 960 F.2d at 297.

*2. Element 3: Materiality*

 To support a claim under the Lanham Act, the plaintiff must show the deception "is material, in that it is likely to influence the purchasing decision." *Cook, Perkiss and Liehe, Inc.*, 911 F.2d at 244.

The standards by which the Court must judge materiality are not well-settled. Some cases suggest that materiality may be measured by examining the subject matter of the advertisement. *See In re Uranium Antitrust Litigation*, 473 F.Supp. 393, 408 (N.D.Ill.1979) (allegation that company misrepresented its uranium supply capability to its utility customers; Court looked to whether the advertising "relates to the principal

924

bases of competition among sellers"); *Vidal Sassoon, Inc. v. Bristol–Myers Co.,* 661 F.2d 272, 278 (2nd Cir.1981) (defendant's shampoo ad depicting consumer preference for its product represented its superiority; the Lanham Act encompasses only misrepresentations with reference to the "inherent quality or characteristic" of the defendant's product). The applicability of these standards to the ad and letter is not self-evident. Century 21 merely asserts that "being the leader in transactions and/or consumer satisfaction relate directly to the 'principal basis' of competition between the parties" and "misrepresent an inherent quality or characteristic of the Defendant's services," and therefore relate directly to a claim which is likely to influence the purchasing decision of consumers. As previously discussed, the ad and letter are both too ambiguous to convey these specific messages. Moreover, there are no defined bases of competition between the parties nor has the "inherent quality or characteristic" of the real estate industry been articulated.

As RE/MAX argues, Century 21 has provided no competent, relevant evidence that the advertisement or letter was likely to influence the purchasing decisions of consumers. Century 21 cites to Thomas' pleadings and the testimony of some RE/MAX executives to support its claim. However, this evidence has no relevance to whether actual consumers would be affected by the claims. Century 21 also cites the Roper study for the proposition that nearly 50% of consumers surveyed indicated they would chose RE/MAX based on the fact that RE/MAX completed more transactions than any other organization. However, the Roper study only examined reactions to the *television commercials* shown by RE/MAX, not the advertisement and letter put in issue by this motion. Thus, the Roper study has no relevance to whether or not the specific advertisement and letter under consideration were likely to influence any consumer purchasing decision.

Finally, Century 21 argues that the Field Survey proves materiality of the advertisement because 57% of the people who read the ad said they were more likely to use RE/MAX and 19% said they were less likely

to use Century 21. This evidence does not establish whether the offending language in the ad affected purchasing decisions—it shows at most that the ad as a whole affects the decisions. *Cook, Perkiss and Liehe* requires that the "deception is material," not that the advertisement as a whole is material. Thus, without any relevant evidence that the claims at issue in the ad and the letter were likely to affect the purchasing decision of consumers, Thomas prevails on this element.

### 3. Element 4: Interstate Commerce

Plaintiff has adduced sufficient evidence under the reasoning of *Thompson Tank & Mfg. Co., Inc. v. Thompson,* 693 F.2d 991 (9th Cir.1982) for a trier of fact to find that the advertisement and letter were used in interstate commerce and/or affect interstate commerce. Real estate sales generally can be said to have an impact on interstate commerce, defendants' agents used the interstate mails, and plaintiff has submitted declaration testimony that the newspaper in which the advertisement was run has an interstate circulation.

### 4. Element 5: Likelihood of Injury

Finally, to prevail under the Lanham Act, a plaintiff must demonstrate that "plaintiff has been or is likely to be injured as a result" of the false advertisements. *Cook, Perkiss and Liehe, Inc.,* 911 F.2d at 244. "[A] plaintiff [under the Lanham Act] must provide more than his 'mere subjective belief' that he will be injured ..." *Walt Disney Productions v. Filmation Associates,* 628 F.Supp. 871, 880 (C.D.Cal.1986). The plaintiff "must submit proof which provides a reasonable basis for that belief." *Coca–Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 316 (2nd Cir.1982); *Walt Disney Productions,* 628 F.Supp. at 880 ("proof of a reasonable likelihood of injury is sufficient"). Again, Century 21 cannot meet its burden on this element with respect to either the advertisement or the letter.

Century 21 must prove "a logical causal connection between the alleged false advertising and its own sales position." *Johnson and Johnson v. Carter–Wallace, Inc.,* 631 F.2d 186, 190 (2nd Cir.1980). Century 21

provides no evidence of a logical causal connection between the Thomas ad or letter and its sales position. The report by Mr. Aigner is not relevant on this point because this report studied the effects of the claims made by "the entire RE/MAX organization," not just those of Thomas and RE/MAX South County. In fact, the Aigner Report indicates Century 21 suffered no loss of business in the Western Region, the region where the advertisement and the letter would have had an effect. The Roper study tested the television commercials, not the ad or the letter, and the Field study does not conclude that the allegedly false claims in the Thomas ad and letter had any effect on purchasers' decisions.

 Century 21 argues that Thomas is liable as a joint tortfeasor for the damages caused by all of RE/MAX's advertising nationwide. Joint tortfeasor liability is available only when the defendant has "knowingly participated in the creation, development and propagation of the ... false advertising campaign...." *Gillette Co. v. Wilkinson Sword, Inc.*, 795 F.Supp. 662, 664 (S.D.N.Y.1992); *see also Allen Organ Co. v. Galanti Organ Builders, Inc.*, 798 F.Supp. 1162, 1171 (E.D.Pa.1992) (defendants not liable as joint tortfeasors because plaintiff lacked evidence that defendants "knew that conduct of [co-defendants] constituted a breach of duty or that defendants provided substantial assistance to [co-defendant] in promulgating and disseminating the claims."). Century 21 has provided no evidence that Thomas has any connection whatsoever to any advertisements other than the ad and the letter at issue here; therefore, Thomas may not be held liable as a joint tortfeasor for the advertisements placed by RMI and Byme. Furthermore, Century 21 has not shown that the claims made by Thomas in the ad or the letter have caused any injury or are likely to cause any injury to Century 21. Thus, Thomas cannot be held liable under any theory of liability proposed by plaintiff.

 Finally, Century 21 offers as evidence of injury its $3.75 million claim for damages based on corrective advertising. However, a claim for damages based on a plaintiff's opinion that it was injured provides no proof of injury. Century 21 must present some evidence that shows that the advertising claims by Thomas and South County likely caused an injury making this advertising necessary. As discussed above, Century 21 has provided no such evidence.

Because Century 21 has failed to demonstrate a genuine issue of material fact with respect to elements 1, 2, 3, and 5, the Court grants Thomas' Motion with respect to Century 21's Lanham Act claims.

### 5. State Law Claims

Thomas also seeks summary judgment on Count II of the First Amended Complaint which is based on §§ 17000 et seq. of the California Business and Professions Code. Century 21 alleges the same facts in support of this claim as it did for its claim under the Lanham Act. Given the lack of opposition by Century 21 to this portion of Thomas' motion and given the merit of Thomas' arguments, the Court grants Thomas' Motion for Summary Judgment as to Count II of the First Amended Complaint.

Thomas' Proposed Statement of Uncontroverted Facts and Conclusions of Law is modified, adopted by the Court as modified, and ordered filed.

### D. RE/MAX International's and Byme's Motion

In the First Amended Complaint, Century 21 accuses defendants RMI and Byme of violating the Lanham Act through their participation in four different groups of advertisements or promotions: 1) television commercials; 2) an advertisement placed by Byme in the magazine *National Relocation and Real Estate;* 3) articles in *The RE/MAX Times,* a company newsletter distributed by RE/MAX; and, 4) statements made at or during the 1993 RE/MAX Convention. RMI and Byme seek judgment on each of these allegations.

### 1. The Television Commercials

Century 21 has alleged that five different television commercials run by RMI constitute false advertising in violation of the Lanham Act. Defendants seek a judgment on the pleadings with respect to these commercials, arguing that the claims made in the

commercials 1) constitute commercial "puffery" which is not actionable under the Lanham Act, and, 2) do not make the false claims alleged in the First Amended Complaint.

■■■■ To state a claim under the Lanham Act, a plaintiff must show the defendant has made a "false statement of fact" about a product or service. *Cook, Perkiss & Liehe, Inc.,* 911 F.2d at 244. "Puffery" is a general claim of superiority or exaggeration which is "expressed in broad, vague or commendatory language.... Puffery is distinguishable from misdescription or false representations of specific characteristics of a product." *Castrol, Inc. v. Pennzoil Company,* 987 F.2d 939, 945 (3rd Cir.1993). Puffery is not actionable under the Lanham Act because it "does not contain the kind of detailed or specific factual assertions that are necessary to state a false advertising cause of action under the Act." *Cook, Perkiss & Liehe, Inc.,* 911 F.2d at 246. A court may consider as a matter of law whether the alleged misrepresentation in an advertisement is a statement of fact, actionable under the Lanham Act, or mere puffery. *Id.* at 245.

■■■■ Defendants argue that the statement "**Out in Front,**" which is contained in all of the commercials, constitutes puffery. The Court must agree. "Out in Front," as it is used in these commercials, is a broad, vague phrase which contains no specific factual assertion about any of the characteristics of RE/MAX. (As defendants note, it is also literally true insofar as the ads depict RE/MAX signs that are "out in front" of listed properties.) As such, it is not actionable under the Lanham Act because "it is beyond the realm of reason to assert ... that a reasonable consumer would interpret this as a factual claim upon which he or she could rely." *Id.* Century 21 attempts to provide evidence demonstrating that this statement could mislead the public. Since the statement is puffery as a matter of law, however, the Court need not consider such evidence. *Id.* at 245.

In addition to the phrase "Out in Front," the commercials contain statements which suggest that RE/MAX agents outsell other real estate agents "3 to 1." These are specific factual assertions and thus do not consti-

tute puffery. *Id.* Century 21 asserts that this language deceives consumers into thinking that the RE/MAX organization outsells other real estate organizations by a margin of three to one. Century 21 complains that, through these commercials, defendants are falsely asserting that RE/MAX completes more transaction sides than Century 21.

Just as a court can look at the face of an advertisement and decide as a matter of law whether the ad constitutes puffery, a court may also determine the meaning of an ad on its face with no reliance on extrinsic evidence. *Castrol, Inc.,* 987 F.2d at 943 (court may decide a claim is literally false and ignore evidence of the absence of customer confusion).

■■■■ As to four of the five commercials at issue, the statements cannot be interpreted as meaning that the RE/MAX organization outsells other real estate organizations three to one. Accordingly, they do not present the message that RE/MAX, as an organization, outsells Century 21. The four commercials entitled "Living Logo 2," "Living Logo 3," "Living Logo 4," and "Graveyard" do contain factual assertions regarding RE/MAX agents outselling the competition. All of these commercials, however, use the words "average" or "sales per agent" to convey the clear meaning that, on average, each RE/MAX agent sells three times as many homes as agents of other organizations. These ads cannot reasonably be interpreted as asserting that the entire RE/MAX organization outsells the entire Century 21 organization by a margin of three to one.

In its First Amended Complaint, Century 21 alleges that the television commercials violate the Lanham Act because they assert that RE/MAX has closed more transaction sides than Century 21. Because the four television commercials discussed above do not make this assertion, the Court concludes that Century 21 can prove no set of facts in support of its claim which would entitle it to relief. Thus, the Court grants defendants' motion for judgment on the pleadings with respect to the commercials entitled "Graveyard," "Living Logo 2," "Living Logo 3," and "Living Logo 4."

■ Century 21 argues in its opposition that it can support its Lanham Act claim by proving that RE/MAX agents on average do not outsell other agents three to one, thus taking issue with the specific claims in the commercials. Such a claim would, however, constitute a new claim of falsehood that was not raised in the First Amended Complaint. Century 21 nowhere alleges falsities regarding average sales per agent.

■ While a Lanham Act claim is not subject to the strict pleading requirements of Rule 9 fraud claims, "the policies which underlie Rule 9's requirement that the nature of an alleged misrepresentation be pleaded with specificity are equally applicable to the type of misrepresentation claims presented in [a] Lanham Act claim. In litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense." *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F.Supp. 1549, 1556 (D.Pa.1985). Thus, the complaint in a Lanham Act claim must at least "place defendants on notice of the wrong they are accused of committing." *Barr Laboratories, Inc. v. Quantum Pharmics, Inc.*, 827 F.Supp. 111, 118 (E.D.N.Y.1993); *Max Daetwyler Corp.*, 608 F.Supp. at 1556. Since this claim regarding average sales per agent was not raised in the First Amended Complaint, Century 21 did not place defendants on notice of the nature of this alleged wrong. Therefore, this claim is not properly before this Court and cannot defeat this motion. *See Max Daetwyler Corp.*, 608 F.Supp. at 1556.

In contrast to "Living Logos" 2, 3, and 4, the commercial entitled "Living Logo 1," rather than using terms such as "average" or "sales per agent," flatly asserts **"our experienced, full-time sales associates outsell other real estate agents 3 to 1."** This language could reasonably be interpreted as making a claim based on total transactions of the RE/MAX organization. Thus, because the language is sufficiently factual and related to the allegations of the First Amended Complaint, the "Living Logo 1" commercial

survives defendants' motion for judgment on the pleadings.

*2. The Magazine Advertisement*

Century 21 alleges that an advertisement placed by Byme in the magazine *National Relocation and Real Estate* also constitutes a violation of the Lanham Act. Century 21 objects to two portions of the ad: a bar graph which claimed approximately 725,000 "Estimated" transactions for RE/MAX in 1992 and the statement below the graph stating, **"RE/MAX is 'Out in Front' in real estate transactions."**

■ Defendants argue that the bar graph is nonactionable because the advertisement clearly labeled the 1992 figures "Estimated." Again, the Court must agree. When one refers to a number as an estimate, that person is telling the audience that the number does not represent a specific factual assertion, but rather an opinion or guess incapable of verification. The estimated 1992 figure is equivalent to puffing because "it is beyond the realm of reason to assert ... that a reasonable consumer would interpret this as a factual claim upon which he or she could rely." *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246.

■ Furthermore, the assertion that "RE/MAX is 'Out in Front' in real estate transactions" constitutes mere puffing. Though the phrase does include a reference to transactions, merely claiming to be "out in front" conveys a vague, general declaration of superiority with no specific factual assertion on which a consumer would rely. Furthermore, the very next sentence in the advertisement tells the reader, "That means we're serious about our goal of never taking a home into inventory." This ensuing statement, telling the audience what the preceding phrase "means," negates any contention that the phrase conveys any specific or comparative claim. Thus, viewed as a whole, the advertisement is not actionable under the Lanham Act. The Court therefore grants defendants judgment on the pleadings with respect to the advertisement in *National Relocation and Real Estate*.

### 3. Article(s) in the RE/MAX Times

In the First Amended Complaint (¶ 23), Century 21 alleges that RE/MAX violated the Lanham Act by making false assertions in an April, 1993, version of *The RE/MAX Times,* a company newsletter distributed by RE/MAX. In the opposition to this Motion, Century 21 also cites to a March, 1993, article, and the Court considers both.

■ The statements in the March, 1993, article once again amount to nothing more than puffery. The article makes no specific factual claims but merely tells the reader that the chairman of RMI has **"declared RE/MAX # 1 in the United States—and the World."** Not only is this mere opinion, but it makes no reference to the category in which RE/MAX is number one. Indeed, the entire article deals with the challenge to other real estate organizations to submit to rankings in a number of categories, including customer satisfaction, experience, agent training, etc. This sort of statement is classic puffery.

The April, 1993, article, on the other hand, specifically claims that **"RE/MAX associates in 1992 completed 652,424 transactions."** The article goes on to claim:

> **"Because some of its major competitors aren't releasing 1992 statistics, it's impossible to absolutely confirm the No. 1 position RE/MAX is now widely thought to hold in the United States.... But RE/MAX International has agreed to independent auditing of its figures in 1993 and is inviting its five major competitors to do the same."**

The statement regarding "the No. 1 position RE/MAX is now widely thought to hold in the United States" must also be regarded as puffing. This statement contains no specific factual assertion. In fact, the article specifically states that "it's *impossible to* absolutely *confirm* the No. 1 position," and that RE/MAX has agreed to an audit to settle the matter. No reasonable consumer reading this article could rely on these statements as a factual assertion that RE/MAX *is* the leader in completed transactions. Thus, this statement in the article is not actionable.

■ The claim that RE/MAX completed 652,424 transactions is a specific factual assertion which does not constitute puffing. In addition, the First Amended Complaint does allege falsehoods based merely on overstatement of transactions alone (rather than comparison). Century 21 says this statement is false because RE/MAX completed at most 627,116 transaction sides in 1992. Assuming without deciding that Century–21's number is correct, this statement may be false. However, an overstatement of 25,308 transaction sides (4%) is not a misrepresentation which is likely to influence the purchasing decision of a consumer. In other words, the alleged false representation is immaterial as a matter of law. *See Borden, Inc. v. Kraft, Inc.,* 224 U.S.P.Q. 811, 1984 WL 1458 (N.D.Ill.1984) (difference between 5 ounces of milk in each slice of cheese and 4.6 ounces is not material). For this reason and the reasons mentioned above, the articles in *The RE/MAX Times* are not actionable under the Lanham Act. *Cook, Perkiss & Liehe Inc.,* 911 F.2d at 246. The Court grants defendants' motion for judgment on the pleadings with respect to the articles.

### 4. The Convention

Century 21 asserts that RE/MAX made false representations about transaction superiority in three different formats during the 1993 RE/MAX Convention. It contends the false claims were made 1) during a speech by Mr. Liniger, chairman of RMI; 2) by Mr. Liniger in a telephone conference call with members of the press; and, 3) in Press Kits distributed for the Convention.

In his speech at the Convention, Mr. Liniger made the following statement to which Century 21 objects:

> **"And today, we obviously are going to broadcast the fact that we are now number 1 in the United States."** Tomko Decl., Exh. 1, p. 8, 11. 14–16.

This is nothing more than a morale-boosting statement of opinion which conveys no specific facts on which a consumer would rely. As puffery, it is not actionable under the Lanham Act. *See Cook, Perkiss & Liehe, Inc.,* 911 F.2d at 245–46.

In addition, when viewed in context, it becomes clear that Mr. Liniger's statement had nothing to do with the categories at issue in this case. In the comments leading up to the statement, Mr. Liniger states statistics regarding the *number of agents* RE/MAX has in certain markets. *See* Tomko Decl., Exh. 1, pp. 7–8. Mr. Liniger does not mention the number of closed transactions or level of customer satisfaction anywhere in that portion of the speech. Thus, even if the statement were interpreted as a statement of fact about being number one, it could still not be interpreted as a statement about being number one in transaction sides or customer satisfaction. Since those are the only categories at issue, this statement by Mr. Liniger cannot create any liability on the part of RE/MAX.

■ As to Mr. Liniger's statement made in a telephone conference call with members of the press, he answered a question from a reporter regarding whether he, Mr. Liniger, was confident that RE/MAX would finish number one in all of the categories of the "Charity Challenge." Mr. Liniger stated:

"Well, I'm not confident I can finish number one in all of the categories anywhere. This is a highly individualized business and [sic] such, there is no question that we dominate the Canadian market and have grown very rapidly in Canada, we also are claiming to the position of number one in the United States, but the truth of the matter is, there has never been an independent study, and a great deal of the advertising that has gone on in the real estate industry has been filled with exaggeration and with no substantiation, and so we don't know if we'd win or not." Liniger Depo., Exh. 173.

While Mr. Liniger does say that RE/MAX is "claiming" to be number one in the United States, he states it as nothing more than opinion and even adds the disclaimer that, given the lack of an independent study, he does not know if RE/MAX would win. In addition, Mr. Liniger does not mention any specific category in which RE/MAX is claiming to be number one. For both of these reasons, this assertion could not be interpret-

ed as a statement of fact about superiority in number of closed transactions. Thus, the statement does not give rise to liability under the Lanham Act. *Cook, Perkiss & Liehe, Inc.,* 911 F.2d at 244–46.

■ Finally, Century 21 alleges that statements in the Press Kits distributed by RE/MAX during the Convention subject RE/MAX to liability.

Specifically, Century 21 points to the following claim:

"As RE/MAX has steadily gained in transactions (while [Century 21] has been losing market share and decreasing in total transactions in the United States), we project that we have in fact overtaken then [sic] as the top real estate organization in the United States, and certainly have achieved that position in North America." Liniger Depo., Exh. 134, p. 4.

However, the very next sentence reads, "Yet Century 21 and our other competitors refuse to submit their numbers to Real Trends and to open their claims to independent audit." *Id.* Reading the entire statement in context, it becomes clear that RE/MAX was acknowledging that their belief about being the "top" organization could not be confirmed without an independent audit.

Other statements in the Press kit point to the conclusion that this was merely a qualified belief. For example:

"We believe that RE/MAX is the largest real estate company in the United States in number of closed transactions. As soon as we can prove this position, we will let consumers know."; "We believe that an independent audit will confirm our position as the number one real estate company in the United States, North America and the world."; "We don't know for sure—that's certainly a major reason for the Challenge.... Until the major national real estate firms open their figures to an independent audit, however, we will not have a definite answer."; "This challenge is to find out the facts, once and for all.... we are willing to pay the costs of inde-

pendent audits and surveys to get those facts." *Id.,* pp. 2, 6, 7, 9.

These statements and the entire concept of the "Charity Challenge" belie any argument that RE/MAX made any specific factual assertions in the Press Kit. The context makes it clear that RE/MAX was stating its beliefs or opinions, statements which are not actionable under the Lanham Act. For these reasons, the Court grants judgment on the pleadings in favor of RMI as to the statements made at or during the 1993 RE/MAX Convention.

In summary, the Court grants judgment on the pleadings in favor of RMI and Byme as to 1) the television commercials entitled "Living Logo 2," "Living Logo 3," "Living Logo 4," and "Graveyard"; 2) the advertisement in *National Relocation and Real Estate;* 3) the articles contained in the March and April, 1993, versions of *The RE/MAX Times;* and, 4) the statements made at, for, or during the 1993 RE/MAX Convention. The Court denies RMI's and Byme's Motion as to the television commercial entitled "Living Logo 1."

RMI and Byme have also asked for Summary Judgment with regard to the advertising placed by Thomas. The Court's conclusion that Thomas faces no liability necessarily decides this issue in these defendants' favor as well.

Finally, RMI and Byme, like Thomas, seek judgment on Count II of the First Amended Complaint which is based on §§ 17000 et seq. of the California Business and Professions Code. As against Thomas, Century 21 alleges the same facts in support of this claim as it did for its claim under the Lanham Act. For the same reasons cited in section III.C.5 above, the Court grants RMI's and Byme's Motion as to Count II of the First Amended Complaint.

## IV.

### *EVIDENTIARY OBJECTIONS*

The evidence filed by defendants in opposition to plaintiff's Motion for Partial Summary Judgment which was objected to by plaintiff was not utilized in disposing of that Motion. Plaintiff's objections are therefore overruled.

In addition, the Court overrules defendant's objections as they relate to all of the Motions before the Court.

## V.

### *CONCLUSION*

In accordance with the foregoing analysis and for the reasons discussed, the Court denies Century 21's Motion for Partial Summary Judgment, grants Thomas' Motion for Summary Judgment in its entirety, and grants in part and denies in part RE/MAX International, Inc.'s and Byme, Inc.'s Motion for Judgment on all claims.

IT IS SO ORDERED.