**Eben W. HASKELL, Plaintiff,**

v.

**TIME, INC., Defendant.**

**Eben W. HASKELL, Plaintiff,**

v.

**PUBLISHERS CLEARING HOUSE, Defendant.**

**Eben W. HASKELL, Plaintiff,**

v.

**The READER'S DIGEST ASSOCIATION, INC., Defendant.**

**Eben W. HASKELL, Plaintiff,**

v.

**AMERICAN FAMILY PUBLISHERS, Defendant.**

Nos. CIV–S–93–1165 DFL GGH, CIV–S–93–1166 DFL GGH, CIV–S–93–1167 DFL GGH, CIV–S–93–1313 DFL GGH.

United States District Court,
E.D. California.

May 14, 1997.

Harold A. Berliner, Eric L. Berliner, Richard Ellers, Nevada City, CA, for Eben W. Haskell in all cases.

James T. Fousekis, Lori A. Shoemaker, Steinhart & Falconer, San Francisco, CA, for TIME, Inc.

Jeffrey J. Lewis, Morgan, Lewis & Bockius, Los Angeles, CA, for Publishers Clearing House.

Alan H. Feldstein, Hall, Dickler, Kent, Friedman & Wood, Los Angeles, CA, Peter Raymond, Jeffrey Tamarin, Hall, Dickler, Kent, Friedman & Wood, New York City, Emmett C. Stanton, Pillsbury, Madison & Sutro, San Francisco, CA, for Reader's Digest Association, Inc.

Terri J. Seligman, Michael P. Zweig, Loeb & Loeb, New York City, for American Family Publishers.

### AMENDED MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Plaintiff Eben Haskell, on behalf of himself and the general public of California, seeks to enjoin various statements made by defendants in their magazine sweepstakes solicitations.[1] The court has diversity jurisdiction under 28 U.S.C. § 1332. All of plaintiff's claims rest upon state law. Defendants move for summary judgment on all claims.

### I. Factual and Procedural Background

In an order filed June 13, 1994, the court dismissed without prejudice the major part of plaintiff's false and misleading advertising and unfair competition claims; dismissed without prejudice plaintiff's claims of violation of California's contest and lottery statutes; and dismissed defendant Time Warner from the suit. *Haskell v. Time, Inc.*, 857 F.Supp. 1392, 1405 (E.D.Cal.1994) (*Haskell I.*). Plaintiff then filed amended complaints as to all remaining defendants. In the amended complaints, plaintiff again claims that defendants' sweepstakes solicitations vi-

olate state laws prohibiting false and misleading advertising, that the operation of the sweepstakes constitute an unfair business practice, and that the sweepstakes are illegal lotteries.[2]

In an order filed June 15, 1995, the court denied in major part defendants' motions to dismiss. *Haskell v. Time, Inc.*, No. CIV–S–93–1165 DFL GGH, 1995 WL 360534 (E.D.Cal. June 15, 1995). The court dismissed all of plaintiff's claims that defendants' rules are misleading except plaintiff's allegation that AFP changed its rules during the course of a single sweepstakes; dismissed plaintiff's claim that PCH's drop notices create the false impression that a failure to order will invalidate the recipient's prior entries; dismissed plaintiff's claim that Time misleads consumers about the sponsorship and operation of its sweepstakes; and dismissed plaintiff's claim that RDA misrepresents the value of its prizes. All other claims remain.

The facts are largely undisputed. Defendants are in the business of selling magazine and book subscriptions. Each company sends out millions of mailings containing product offers and sweepstakes opportunities to households across the United States. Each defendant's sweepstakes bulletins are similar in content and format. The bulletins proclaim enthusiastically, but tautologically, that the recipient is the winner, if the recipient has and returns the winning entry. The official rules of the sweepstakes accompany each bulletin.[3] The majority of recipients do not respond to the mailings; of those who do respond, only a minority purchase any products. *E.g.,* Time's Statement of Undisputed Facts ¶¶ 4,5; AFP's Statement of Undisputed Facts ¶¶ 15–17.

The defendants readily agree to plaintiff's claim that they send additional bulletins to

---

1. The remaining defendants in the case are Time, Inc. ("Time"), Publishers Clearing House ("PCH"), The Reader's Digest Association, Inc. ("RDA"), and American Family Publishers ("AFP").

2. Plaintiff relies on statements made in defendants' sweepstakes bulletins as evidence of misleading statements.

3. Although the frequency of each company's prize drawings and the prizes themselves differ, the rules of the different companies' sweepstakes are generally similar. For example, each defendant's rules state that no purchase is necessary to enter or win, explain that the chances of winning depend on the number of entries distributed and received, and explain how and when prizes will be awarded. Differences in defendants' sweepstakes are discussed in later sections.

recipients who have responded to earlier mailings by purchasing products. Defendants assert that this is no more than common sense marketing. Repeat customers[4] receive multiple bulletins that contain further sweepstakes opportunities and product offers. These bulletins may also include an announcement that the customer has qualified for membership into a "V.I.P. Club" or other preferred-customer group.[5] Whether addressed to customers who have purchased in the past or to prospective customers, follow-up mailings may also contain a reminder that failure to enter results in forfeiture of the opportunity to win the sweepstakes, and a reminder that because mailing costs are high, a failure to enter the sweepstakes or purchase products may result in the customer's name being dropped from the mailing list.

Plaintiff argues that these practices—particularly the repeat mailings to customers—violate State lottery and unfair business practices laws by leading customers to believe that they must purchase products to enter the sweepstakes, obtain additional entries, or receive preferred-customer benefits. Plaintiff recognizes that none of the defendants conditions sweepstakes entry on a purchase and none of the defendants promises that a purchase will lead to additional mailings, entries, or other opportunities or benefits. Undaunted, plaintiff advances a new theory in the amended complaint, a theory developed particularly to fit the case of recipients who become obsessed with playing the sweepstakes. According to plaintiff, repeat customers come to learn that if they order, they will receive further mailings, with additional entries and preferred-customer opportunities. Once they realize this cause and effect relationship, plaintiff contends that repeat customers in effect are in the same position as if defendants conditioned entry, chances, or preferred-customer opportunities on a purchase.

## II. Illegal Lotteries

### A. Standing

 Plaintiff claims that defendants' sweepstakes violate criminal statutes outlawing certain lotteries.[6] Defendants argue that plaintiff does not have standing to prosecute actions under the Penal Code. Plaintiff's claims, however, are brought "on behalf of the People of the State of California pursuant to Business and Professions Code Section 17204 and 17535." *E.g.,* Time 2d Amend. Compl. ¶ 60. Under § 17200 of the California Business and Professions Code, "unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."[7] A private plaintiff may bring an action under §§ 17200 and 17204 to redress any unlawful business practice, including an unlawful practice that does not otherwise permit a private right of action, such as a criminal statute.[8] *Summit Tech., Inc. v.*

---

**4.** Throughout this opinion, the term "customer" will be used to refer to sweepstakes recipients who previously have purchased a magazine or other product through a sweepstakes mailing.

**5.** The V.I.P. Club is defendant Time's preferred-customer group. *See* Time 2d Amend. Compl. Ex. 8. PCH offers membership in the "President's Club" to "top" customers. *See* PCH 1st Amend. Compl. Ex. 5. Defendants AFP and RDA do not have special clubs for preferred customers but each offers special bonuses to its "Best Customers." *See* AFP 1st Amend. Compl. Ex. 5; RDA 1st Amend. Compl. Ex. 9.

**6.** California Penal Code § 319 defines a lottery as: "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it...." Cal.Penal Code § 319 (West 1988).

**7.** Under § 17204 an action for injunctive relief may be brought "by any person acting for the interests of itself, its members or the general public." The California Supreme Court has held that § 17204 " 'demonstrates a clear design to protect consumers as well as competitors by its final clause, permitting inter alia, any member of the public to sue on his own behalf or on behalf of the public generally.' " *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 197 Cal.Rptr. 783, 790, 673 P.2d 660 (1983) (quoting *Barquis v. Merchants Collection Ass'n of Oakland,* 7 Cal.3d 94, 101 Cal.Rptr. 745, 756, 496 P.2d 817 (1972)).

**8.** Defendants argue that because the California Supreme Court has granted review of a case permitting private plaintiffs to bring actions under § 17200 to address violations of state criminal statutes, the viability of a claim under § 17200 is questionable. *See Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 46 Cal.App.4th

*High–Line Med. Instruments Co.,* 933 F.Supp. 918, 942 (C.D.Cal.1996) (citing *People v. McKale,* 25 Cal.3d 626, 631–32, 159 Cal.Rptr. 811, 813–14, 602 P.2d 731, 733–34 (1979)); *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 197 Cal.Rptr. 783, 790–91, 673 P.2d 660, 667–69 (1983); *McKale,* 159 Cal.Rptr. at 814, 602 P.2d at 734 (relying on *People v. K. Sakai Co.,* 56 Cal.App.3d 531, 128 Cal.Rptr. 536 (1976), in which the district attorney was permitted to bring a civil unfair competition action for violation of the Penal Code). Plaintiff therefore has standing to bring a claim under § 17200 that defendants' sweepstakes are illegal lotteries.

## B. Are the Sweepstakes Illegal Lotteries?

Three elements must be present to constitute a lottery: prize, chance, and consideration. *California Gasoline Retailers v. Regal Petroleum Corp.,* 50 Cal.2d 844, 851, 330 P.2d 778 (1958). If any of these elements is missing, the game is not an illegal lottery. It is undisputed that defendants' sweepstakes contain an element of chance and that prizes are awarded. The issue presented in this case is whether defendants' repeat mailings amount to a requirement that consumers pay valuable consideration to obtain entries for the contests.

1371, 54 Cal.Rptr.2d 319 (1996), *petition for review granted,* 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996). But until this case is decided the court must follow existing case law, particularly *People v. McKale,* 25 Cal.3d 626, 159 Cal.Rptr. 811, 602 P.2d 731 (1979) and *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 197 Cal.Rptr. 783, 673 P.2d 660 (1983).

**9.** It is undisputed that defendants particularly target past customers for further mailings.

Three of the defendants send the bulk of their mailings to people based on the RFD formula, which takes into account the recency of a person's last contact with the company, the frequency of contact, and the dollar amount of purchasing activity. In addition to mailings based on the RFD formula (commonly referred to as "customer mailings"), these companies also send bulletins to people whose names are obtained from rented lists (referred to as "acquisition mailings"). Each company uses a slightly different version of the RFD formula and each relies on the RFD formula to a different extent. For example, while two of the companies consider a

### 1. Purchase required to receive "extra" chances.

Plaintiff contends that by sending more sweepstakes entries—with solicitations to subscribe—to past customers, defendants lead these customers to believe that they can "purchase" more entries by purchasing more magazines.[9] Plaintiff argues for a theory of what may be termed de facto consideration based on consumer experience. The consideration is "de facto" because there is no promise by the sweepstakes operator to send an entry upon a further magazine order and there is no right in the recipient to insist on a further entry. There is simply a subjective expectation based on past practice.

Plaintiff's theory of de facto consideration is not part of California law, certainly not California criminal law. The lottery statute makes criminal schemes for the distribution of property by chance "among persons who have paid or promised to pay any valuable consideration for the chance." Cal.Penal Code § 319. The lottery statute was enacted in 1872. Consideration is defined in § 1605 of the Civil Code as "[a]ny benefit conferred ... upon the promisor, by any other person, to which the promisor is not lawfully entitled ... as an inducement to the promisor." The definition of "consideration" was also included in the State Code of 1872. The definition

sweepstakes entry without a purchase order ("a sweepstakes no") as a contact with the company for purposes of determining "recency," the other does not keep track of sweepstakes noes. Because two of the companies target sweepstakes noes for repeat mailings, both non-customers and customers receive more frequent mailings from these companies than a person who does not respond at all to a mailing. While the third company does not track sweepstakes noes, it does not mail only to customers. Approximately half of its sweepstakes mailings during each sweepstakes period are acquisition mailings.

The remaining defendant does not use the RFD formula. Instead, 80 percent of its mailings are to names obtained from rented lists. It therefore appears that this company sends more sweepstakes bulletins to non-customers than to customers that have responded to its mailings. However, this defendant does not dispute that it sends repeat mailings to customers.

The information in this footnote derives from documents filed under seal.

assumes that there is a promisor and that the consideration is an inducement "for a promise."

A penal statute is strictly construed. The lottery statute makes it a crime if the operator of the lottery promises a chance in return for some benefit. Absent a promise, whether explicit or implicit, there is no consideration. Without such a promise by the lottery operator, the player has not paid "any valuable consideration for the chance." To adopt plaintiff's theory of de facto consideration would be to criminalize the widespread and fairly unremarkable marketing practice of targeting for repeat future mailings those recipients who have ordered in the past. No California case involving an alleged illegal lottery applies the law in this way. To the contrary, California courts have consistently held that business promotions are not lotteries so long as tickets to enter are not conditioned upon a purchase. See Regal, 50 Cal.2d at 858–59, 330 P.2d 778 (finding gas station's promotional scheme legal because anyone could ask attendant for a ticket and because the station also mailed tickets throughout the community); People v. Carpenter, 141 Cal.App.2d 884, 890, 297 P.2d 498 (1956) (finding movie theater's contest legal because tickets were offered to customers and non-customers); People v. Cardas, 28 P.2d 99, 101 (1933) (same).

Here, each defendant's official rules state that no purchase is necessary to enter or win. See Time 2d Amend. Compl. Ex. 2 ("NO PURCHASE NECESSARY"); PCH 1st Amend. Compl. Ex. 1 ("NO PURCHASE NECESSARY TO ENTER"); RDA 1st Amend. Compl. Ex. 10–1 ("No purchase is necessary."); AFP 1st Amend. Compl. Ex. 1–1 ("NO PURCHASE NECESSARY TO ENTER OR WIN"). There is no insinuation that a purchase will enhance one's chances of winning. No one is ever required to purchase a chance to win. A customer who purchases a magazine subscription is paying only for that subscription, not for the entry into the sweepstakes, and has no right to insist that more entries be provided. Plaintiff admits that only a minority of people who receive sweepstakes bulletins even enter the contest, and that of this group of entrants, only a much smaller minority of entrants purchase a product when they enter the contest. E.g., Plf.'s Response to Time Undisputed Fact 5; Plf.'s Response to PCH Undisputed Fact 6. Recipients understand that no purchase is required to enter.

Furthermore, plaintiff's theory also stumbles because the purchase of a product is not the only way a recipient can obtain additional chances. Defendants either send multiple entries to entrants who do not purchase any products or permit anyone to request additional entries. PCH and AFP explicitly offer alternate forms of entry. PCH's official rules state, "Write-in entries will be accepted so long as each is received separately. Just send your full name and address on a postcard," and, in bold print, "To receive future Sweepstakes opportunities, or to obtain our most recent list of winners, just write to us at the address below and let us know." PCH 1st Amend. Compl. Ex. 2–1. AFP's official rules state in a separate paragraph, "To receive future sweepstakes opportunities or a list of major prize winners just write to us at the address below." AFP 1st Amend. Compl. Ex. 3–1. Time accepts write-in entries although it does not disclose this form of entry in its sweepstakes mailings. Aside from accepting write-in entries—only RDA does not—all defendants send extra mailings to persons who merely enter the sweepstakes without purchasing products. E.g., Regan Dep. at 45, 50; PCH Mem. at 5–6; Time Undisputed Facts 6, 9; Kieselstein Rebuttal Decl. at 2; AFP Undisputed Fact 11. The recency, frequency, and dollar—"RFD"—marketing formula used by two of the defendants takes into account not just the dollar amount a person spends, but also the recency and frequency of a person's responses. Thus, if someone enters without ordering, that person will be targeted for future mailings because an entry indicates that person is receptive to mail-order marketing generally. The other two defendants also target persons who enter without ordering for future mailings. Moreover, since recipients appear on multiple mailing lists, it is also possible that recipients will receive multiple mailings whether or not they return the entry form, let alone purchase a magazine product.

Finally, the factual setting here is significant. Defendants operate nationwide sweepstakes involving literally hundreds of millions of mailings and entries. The entries are widely distributed. Multiple entries also are widely available. In these circumstances the sweepstakes at issue here do not fit within the scope of the lottery statute merely because some customers come to believe that they may enhance their chances of receiving further solicitations if they purchase a product.

### 2. Indiscriminate distribution of chances.

Plaintiff argues that because more invitations to enter are sent to customers than to non-customers, defendants do not distribute chances to win in a random and indiscriminate manner, and, therefore, the sweepstakes are illegal lotteries. Plaintiff relies on *People v. Gonzales,* 62 Cal.App.2d 274, 281, 144 P.2d 605 (1944), in which the court held that a theater's promotion was an illegal lottery because only a nominal number of tickets were distributed to non-patrons. *Id.* at 281–84, 144 P.2d 605 ("A valuable consideration was paid. What did the purchaser get? Not simply a ticket for the screen show, but a ticket to that, and to the chance drawing.... That was the plan and purpose for which the consideration was paid.").

The sweepstakes at issue here are not at all comparable to the lottery in *Gonzales*. By contrast to the theater in *Gonzales*, defendants distribute general mass mailings to customers and non-customers. Although defendants do send more mailings to known customers, their use of rented mailing lists ensures that many entries are distributed to random and unknown households. The scale of these sweepstakes is such that the distribution can only be described as indiscriminate.

For the reasons given above, defendants' general sweepstakes are not illegal lotteries. Defendants' motions for summary judgment on the illegal lottery claims are therefore granted.

### C. Are the Customer-Only Sweepstakes Illegal Lotteries?

■ Each of the defendants except Time have in the past offered special customer-only contests to "preferred" customers.[10] Plaintiff argues that many repeat customers purchase products just so that they can qualify for these special sweepstakes. Plaintiff contends that purchases for this purpose constitute consideration for entry, making the customer-only sweepstakes illegal. Plaintiff's argument in this respect is similar to the argument he advances concerning the "extra" chances. Again, the argument relies on a theory of de facto consideration: experienced customers come to understand that entry to a restricted, customer-only sweepstakes will be offered to them if they purchase and thus their purchase is, in effect, consideration for entry into the customer-only sweepstakes.

■ No case has so held. Contests with restricted eligibility requirements are legal, so long as the requirements are unrelated to the payment of consideration. *See Polonsky v. City of South Lake Tahoe,* 121 Cal.App.3d 464, 176 Cal.Rptr. 319, 320 (1981) (holding that a city may distribute sewer permits through a random drawing to a class of people who own land in a certain area). Defendants' customer-only sweepstakes have one eligibility requirement—that the entrant be a past customer of the defendant. No defendant mails out an invitation to become a customer so that the recipient may enter the customer-only sweepstakes. No promise is made at the time of the purchase that there will be a customer-only sweepstakes, and a customer has no right to such a sweepstakes. Thus, the consideration paid is for a magazine product only and not for a customer-only sweepstakes opportunity. No additional purchase is required to participate in a custom-

---

**10.** Time, Inc. Home Entertainment ("TIHE"), a subsidiary of defendant Time, Inc., has offered V.I.P. status to good customers. However, TIHE did not offer a special customer-only sweepstakes to V.I.P. customers. Instead, TIHE provided fur- ther opportunities to V.I.P. customers to enter the $100,000 Giveaway Sweepstakes, which was a part of the general sweepstakes and open to any entrant. Time Mem. at 4.

er-only sweepstakes. *See, e.g.*, AFP Reply at 11.

Just as with plaintiff's earlier attempt to apply a de facto consideration theory, to accept plaintiff's reasoning here would make innocuous, common practices a violation of California criminal law. Customer-only sweepstakes include not only nationwide sweepstakes such as those offered by defendants, but also prizes given randomly by ticket stub numbers at sporting and cultural events. Can it be a crime for a symphony to give away two free tickets to a performance to the holder of a certain ticket number drawn at random? Surely not, and the argument is no more cogent simply because customers come to expect that there may be such prizes at all performances.

In short, because eligibility for customer-only sweepstakes does not hinge on the payment of consideration, such sweepstakes are not illegal. Defendants' motions for summary judgment as to the customer-only sweepstakes claims are granted.

### D. AFP's "Prompt–Pay" Sweepstakes

■ In Count 9 of the amended complaint against AFP, plaintiff alleges that AFP's "Prompt–Pay" sweepstakes, another customer-only contest, is an illegal lottery because payment by a certain date is a requirement for eligibility. Customers receive an entry invitation for the Prompt–Pay sweepstakes with their invoices for AFP subscriptions. The invitation explains that if the customer pays the bill by a certain date, the customer will be automatically entered into a special $100,000 sweepstakes. The invitation also includes the official rules for the Prompt–Pay sweepstakes. The rules state that "[n]o new purchase is required to enter. You are eligible only if you have subscribed and agreed to pay prior to the date you received this sweepstakes offer." AFP 1st Amend. Compl. Ex. 12.

AFP's order forms do not indicate a payment deadline but do offer a "4–step easy

pay plan" by which a customer need only "pay ¼ each month." AFP 1st Amend. Compl. Ex. 4–8. It appears that AFP may intend that customers will begin to pay for their subscriptions one month after ordering a magazine. If the invoice's request for payment by a certain date is for an earlier date than the one-month time frame, then the invoice could create a new obligation such that the recipients' prompt payment could constitute consideration for entry into the prompt pay sweepstakes. If, however, the payment deadline is sometime after one month has passed, then AFP is only asking that customers fulfill their pre-existing obligations to AFP.[11] Acceding to this request would not constitute consideration. *Estate of Bray*, 230 Cal.App.2d 136, 142, 40 Cal.Rptr. 750 (1964) ("Under the definition of consideration in Civil Code, Section 1605 doing what one is already legally bound to do cannot be consideration.").

It is unclear from the record whether the requested payment date is less than one month from the date of order. On the current record, the court cannot determine whether the Prompt–Pay sweepstakes imposes a new obligation on potential entrants and requires contestants to pay something to enter. Summary judgment is denied.

### III. Unfair Business Practices Act Claims

#### A. Reasonable Consumer Standard

■ Plaintiff's remaining claims are brought under the Business and Professions Code. To survive summary judgment, plaintiff must prove that defendants' statements are misleading to a reasonable consumer. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) (finding that a false advertising claim under the California Unfair Business Practices Act is analogous to a claim under the Lanham Act and therefore applying a reasonable consumer test to a false advertising claim regarding sweepstakes promotions); *Haskell v. Time, Inc.*, 857 F.Supp. 1392, 1399 (E.D.Cal.1994) (*Haskell I* ) (same). Under the reasonable consumer standard,

---

**11.** The rules of the Prompt–Pay sweepstakes are ambiguous. Although eligibility is limited to customers who have "agreed to pay prior to the date you received this sweepstakes offer," it is unclear whether eligibility extends to all customers who

have agreed to pay for their subscriptions or only to those customers who have agreed to a specified payment deadline that falls "prior to the date you received this offer."

plaintiff is required to show not simply that the defendants' bulletins *could* mislead the public, but that they were *likely* to mislead the public. *See Southwest Sunsites, Inc. v. F.T.C.*, 785 F.2d 1431, 1436 (9th Cir.1986) (noting that FTC must show probable, not merely possible, deception to prove a violation of section 5 of the FTC Act).

▮ Furthermore, anecdotal evidence alone is insufficient to prove that the public is likely to be misled. *William H. Morris Co. v. Group W. Inc.*, 66 F.3d 255, 258 (9th Cir.1995) (per curiam) (finding that the plaintiff had failed to meet its burden of demonstrating that "a *significant* portion" of recipients were misled by the defendant's letter because plaintiff's evidence consisted solely of the testimony of two of 300 recipients, of the company president, and of an employee who had received phone calls from confused recipients) (emphasis in original). Thus, to prevail, plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers. *See Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297, 298 (2d Cir.1992); *Coca–Cola Co. v. Tropicana Products Inc.*, 690 F.2d 312, 317 (2d Cir.1982). In *Merck*, the court concluded that a plaintiff must demonstrate that "a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement" to state a cognizable claim. 960 F.2d at 298. As discussed below, plaintiff fails to meet this evidentiary burden.

### B. The Allegations

Plaintiff's main allegations under §§ 17200 and 17500 relate to defendants' "threats" of forfeiture of sweepstakes entries and defendants' statements that customers receive "extra" chances.

▮ The forfeiture statements warn potential sweepstakes participants that unless the entry is returned on time, the holder of the numbers contained in that entry cannot claim the prize should one of those numbers turn out to be the winning number. Plaintiff claims that defendants mislead consumers by implying that if a participant does not return an entry, all previous entries will also be forfeited. Plaintiff relies on statements such as:

> [Y]our life will be filled with exciting new possibilities if you return the grand prize winning entry. **But let me give you fair warning:** if you fail to return an entry, there is no way you can win the $1,666,-675.00. In fact if you hold the Grand Prize winning entry and fail to respond, you will FORFEIT the $1,666,675.00!. And then, we'll have no choice but to award the prize money to someone else! so return your entry as soon as possible.

Time 2d Amend. Compl. Ex. 3–1.

> As you can see from the enclosed NOTICE OF FORFEITURE made out to [recipient's name], if your entry doesn't make it on time we'll have no choice but to void the assigned numbers—and that means you'll automatically forfeit all prize money any of your Guaranteed Finalist numbers may have won. And as much as we'd like to, we can't make any exceptions even for folks like you who enter regularly.
>
> **NOTICE OF FORFEITURE:** Our computer has assigned you 10 extra Super-Prize numbers in the Publishers Clearing House Sweepstakes. **And all ten of them are qualified to win $1,000,000.00 and $10,000,000.00,** but you must get your entry in on time. We don't want to void your numbers and award any prize money you might have coming to you to someone else—but if you don't mail your entry, we'll have no choice. A Final Round entry document bearing your ten numbers is enclosed. **Mail it at once to get 10 extra chances to win millions!**

PCH 1st Amend. Compl. Ex. 3–1, 3–3.

Neither of these bulletins ever refers to past entries. They are not reasonably understood as suggesting that past entries will be forfeited should the consumer choose not to return the current entries. Even if it were possible to interpret the language as plaintiff suggests, plaintiff has failed to meet his evidentiary burden.

Plaintiff relies only on the declarations of a few sweepstakes customers and the declaration of one professor of rhetoric. Plaintiff

provides no consumer survey evidence indicating that a significant portion of the population has been misled by defendants' bulletins. Indeed, plaintiff does not dispute that a majority of recipients neither respond to defendants' bulletins nor purchase any of defendants' products. Plaintiff has therefore failed to prove that defendants' statements mislead the reasonable consumer. Summary judgment on the forfeiture claims is therefore appropriate. *See In re Century 21–RE/MAX Real Estate Advertising Claims Litigation,* 882 F.Supp. 915, 922–23 (C.D.Cal. 1994) (granting summary judgment for defendant because Century 21 provided no evidence of the effect Re/Max ads had on consumers).

▪ Plaintiff also claims that defendant AFP's "drop notices" mistakenly lead customers to believe that they must purchase products in order to avoid being dropped from defendants' mailing lists.[12] Plaintiff relies on statements such as:

> We really regret it but we simply cannot afford to keep on writing to groups of people who never buy magazines. If you do not order now, or write to stay on our list, you may be among the first to go. Those who are dropped now will miss out—there's no guarantee of another chance for them.

AFP 1st Amend. Compl. Ex. 1–2.

> Mailing costs have skyrocketed.... Names must be cut from our regular mailing list. Groups of people who do not order will be the first to go.

> With costs rising as they are we must restrict our best offerings to groups of people who buy magazines. We're sorry to have to say so, but—if you do not order this time or write to stay on our list, you may find yourself excluded from the most rewarding opportunities in our history. Don't let your name be dropped. An order right now will keep your name on our regular mailing list.

AFP 1st Amend. Compl. Ex. 2–2, 2–4. A reasonable consumer would not conclude

from these statements that a purchase is required to continue receiving AFP's mailings. Both examples clearly state that a consumer may write to AFP and request to remain on the mailing list. And again, even if it were possible to conclude that one's name will be dropped from the mailing list if one does not purchase a product, plaintiff has provided insufficient evidence that reasonable consumers would be misled by the statements. *See In re Century 21–RE/MAX Real Estate Advertising Claims Litigation,* 882 F.Supp. at 922–23.

▪ Finally, plaintiff also claims that defendants' statements that repeat customers receive "preferences" and "extra" chances are misleading in that they lead customers to believe that by purchasing products, they are increasing their chances of winning the sweepstakes. This is an argument in the alternative to plaintiff's claim that defendants' sweepstakes are illegal lotteries because customers in fact are treated preferentially by receiving repeat mailings. Plaintiff here relies on statements such as:

> And you can hardly refer to Reader's Digest as a stranger when many of Reader's Digest products have been welcome in [your] home since 1987. Looking back at our customer File, I see that you have entered our Sweepstakes in the past as a Reader's Digest customer. Plus, the fact that you have purchased 41 of our products, and most recently, Webster's Dictionary 3rd ed., is a fact we couldn't let go unnoticed.

> Because you've been loyal to the company and displayed a faith and trust in our products through the years, we want to show our loyalty to you. As a way of expressing our thanks, we gave preference to [your] name to pass through the initial stages of the Sweepstakes.

RDA 1st Amend. Compl. Ex. 5–1.

The next page of this bulletin states that the odds of winning the Grand Prize in this sweepstakes are approximately one in 213,-500,000. *Id.* The statement's reference to "preference" is entirely vague. Nothing spe-

---

**12.** Plaintiff's claim that PCH's "drop notices" violate §§ 17200 and 17500 was dismissed in the Order of June 15, 1995. No defendant other than PCH or AFP includes "drop notices" in its mailings.

cific is offered. The statement as to preference is a meaningless form of puffing. Given the remote odds of winning, no reasonable person would rely on this vacuous language to conclude that by purchasing products, one may substantially increase one's odds of winning the sweepstakes.

Plaintiff also relies on statements such as:

> And thanks to your recent entry, you're getting this extra opportunity for a better-than-most shot at winning. With this FINAL ROUND ENTRY, you can activate not 1 ... not 10 ... but *20* SuperPrize Numbers to *DOUBLE YOUR CHANCES* to win $10,000,000.00 from this Bulletin!
>
> All it takes to *instantly* Double Your Chances is a timely entry. When you select any of our *un* beatable deals, affix the special seal to your Double Your Chances Order Certificate and we'll immediately double your 10 SuperPrize Numbers to 20—giving you double the chance of winning! Of course, no purchase is ever necessary to enter or win. So if not ordering this time, be sure to follow the directions on the Non–Order Entry Certificate to get all 20 of your SuperPrize Numbers in the running.

PCH 1st Amend. Compl. Ex. 2–2. This statement states only that the recipient of the bulletin has received an "extra opportunity" to enter because of a prior entry, not a prior purchase. Furthermore, the bulletin expressly states that no purchase is necessary to activate all 20 SuperPrize Numbers. Thus, no reasonable person would conclude that a purchase is a required prerequisite for receiving "extra" chances. And, again, plain-

tiff has provided insufficient evidence to prevail under the reasonable consumer standard.

For the reasons given above, defendants' motions for summary judgment on plaintiffs' claims under Sections 17200 and 17500 of the California Unfair Business Practices Act are therefore granted.

### C. Defendants' Distribution of Entries

Plaintiff's eighth cause of action claims that defendants wrongfully fail to disclose that they distribute additional chances to customers through the use of a sophisticated computer program.[13] Plaintiff appears to challenge both defendants' distribution schemes as an unlawful business practice and defendants' disclosures of their distribution schemes as misleading advertising. Both claims fail.

First, because defendants' distribution schemes[14] do not violate the lottery statute, *see* section II.B. *supra*, they do not violate the unfair competition laws prohibiting unlawful business practices. *See People v. McKale*, 25 Cal.3d 626, 159 Cal.Rptr. 811, 602 P.2d 731 (1979) (defining an unlawful business practice as anything that can properly be called business practice and is at the same time prohibited by law).

Second, plaintiff's claim that defendants' statements that "No Purchase Is Necessary" to win are misleading is wholly unsupported by the evidence. Plaintiff has failed to provide any evidence that reasonable consumers are misled by the statement that "No Purchase Is Necessary" to win and has also failed to provide any evidence that defendants' statement is false. Indeed, as discussed in section II.B. above, no one is

---

13. Each of the four complaints contains the following allegation:

> Defendants unfairly and in a misleading manner utilize a sophisticated computer program to control the distribution of sweepstakes entries by providing more and greater additional chances to enter said sweepstakes to customers and those who have in the past ordered magazines and merchandise without disclosing this practice to those who are not customers or revealing this fact [in the rules], but to the contrary defendants state that "No Purchase Is Necessary" which is misleading because for an entrant to have a reasonable chance of winning said sweepstakes an entrant must pay the

defendants consideration of ordering magazines or merchandise.

> Time 2d Amend. Compl. ¶ 51; AFP 1st Amend. Compl. ¶ 51; PCH 1st Amend. Compl. ¶ 51. Plaintiff's claim against RDA reads the same as the above except for the last phrase, which reads "but to the contrary defendants state that 'No Purchase Is Necessary' which is misleading because entrants who do not order do not have an equal chance to those who do order of winning the sweepstakes." RDA 1st Amend. Compl. ¶ 51.

14. Defendants' distribution schemes are explained in footnote 9 *supra*.

required to purchase any of defendants' products in order to win any sweepstakes prize.[15] Defendants' motions for summary judgment on plaintiff's eighth cause of action are therefore granted.

### D. PCH's and AFP's Use of Pre–Selected Numbers

 Plaintiff claims that defendants AFP and PCH includes statements in their bulletins regarding the use of pre-selected numbers that mislead participants about the frequency of prize drawings and about the odds of winning the sweepstakes. *See* PCH 1st Amend. Compl. ¶¶ 33–42; AFP 1st Amend. Compl. ¶¶ 33–42. According to plaintiff, the use of pre-selected numbers allows defendants AFP and PCH to misrepresent the frequency of prize awards because defendants state that they conduct prize drawings every six months. This statement is neither misleading nor false; defendants do hold prize drawings every six months.

Plaintiff also claims that earlier entries are less likely to win the sweepstakes because not all numbers have been distributed. *See* AFP 1st Amend. Compl. ¶ 36(C). This theory, which borders on the incomprehensible, has never been coherently explained by plaintiff. Plaintiff appears to believe that the numbers distributed earlier in the sweepstakes are 75 percent less likely to win the sweepstakes than numbers distributed later in the sweepstakes if the sweepstakes continues after the first pre-selected number has been revealed. Plaintiff fails to explain why this could be the case. Moreover, defendants' official rules state that the odds of winning are dependent on the number of entries submitted,[16] and plaintiff fails to provide any evidence that this is false. Defendants' motions for summary judgment on the pre-selection claims are granted. *See In re Century 21–RE/MAX Real Estate Advertising Claims Litigation*, 882 F.Supp. 915, 922–23 (C.D.Cal.1994).

### E. AFP's Rule Change During Sweepstakes # 27

 Plaintiff claims that during the course of sweepstakes # 27, defendant AFP changed the rules under which the sweepstakes was conducted. AFP 1st Amend. Compl. ¶¶ 43–48. Plaintiff complains that AFP improperly increased the prize amount from six $1 million prizes to one $10 million grand prize. Defendant AFP points out that this change is permitted under the official rules of the sweepstakes, which permit unclaimed prizes to be combined with other prizes. *See* AFP 1st Amend. Compl. Ex. 2–1 (official rules for sweepstakes # 27). Plaintiff also complains that some printings of the official rules for sweepstakes # 27 omitted to state that "Any pre-selected winning number announced on T.V. will be retired before the next mailing and no longer valid. New numbers will be selected to replace them." *Id.* ¶ 45(B). Defendant points out that this statement was contained in other printings of the official rules both before and after the printing of which plaintiff complains. *See id.* Ex. 3–1, 6–1. Furthermore, there is no evidence that the omission of this statement was intentional or that it confused or misled any sweepstakes participants. Defendant AFP's motion for summary judgment on this claim is therefore granted.

### IV. Conclusion

For the reasons stated in this opinion, defendants' motions for summary judgment are GRANTED as to all claims except for plaintiff's claim that defendant AFP's Prompt–Pay sweepstakes is an illegal lottery. As to that claim, defendant AFP's motion for summary judgment is DENIED.

IT IS SO ORDERED.

---

**15.** The winners of million-dollar prizes of defendants' sweepstakes are often not purchasers. *E.g., Time* Undisputed Fact 32; PCH Mem. at 10 (eighteen of twenty-three $1 million prizes since 1986 have been awarded to people whose entries were not accompanied by an order).

**16.** *E.g.,* PCH 1st Amend. Compl. Ex. 1 ("[O]ur Bulletins are broadly distributed.... All those who mail back entries from this Bulletin on time absolutely go into the only group from which our next SuperPrize winner will come. *Odds of winning* depend, of course, on the total number of entries we receive."); AFP 1st Amend. Compl. Ex. 1 ("Odds of winning determined by number of entries returned.").